IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GREGORY MERCADO**, | Case No. 3:21-cv-1224-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CARDINAL EMPLOYERS ORGANIZATION, INC.; CARDINAL SERVICES, INC.; and INTEGRATED 3D LLC d/b/a I3D MFG**, | |
| Defendants. | |

Aaron W. Baker and Serena L. Liss, BAKER LAW PC, One SW Columbia Street, Suite 1850, Portland, OR, 97204. Of Attorneys for Plaintiff.

John A. Berg, Joseph M. Cooper, and Christine E. 600,000Sargent, LITTLER MENDELSON, PC, 1300 SW Fifth Avenue, Wells Fargo Tower, Suite 2050, Portland, OR, 97201. Of Attorneys for Defendant Integrated 3D LLC d/b/a I3D MGF.

**Michael H. Simon, District Judge.**

Defendants Cardinal Employers Organization, Inc., and Cardinal Services, Inc. (collectively, Cardinal Defendants) provided human resources services to Defendant Integrated 3D LLC (I3D). In April 2019, Defendants hired Plaintiff Gregory Mercado as I3D's Chief Operating Officer and Chief Quality Officer at I3D's facility in The Dalles, Oregon. I3D terminated Plaintiff's employment as of September 1, 2020. Plaintiff alleges that, during his

PAGE 1 – OPINION AND ORDER

employment with I3D, Defendants discriminated against him based on Plaintiff's membership and duties in the military and retaliated against Plaintiff for asking about wages, reporting criminal activity, opposing unlawful employment practices, and using protected sick leave. Defendant I3D moves to compel arbitration, based on terms in Plaintiff's employment agreement.[1] ECF 7. Plaintiff does not dispute that his employment agreement with I3D contains a mandatory arbitration clause but argues that the agreement is unenforceable as both procedurally and substantively unconscionable. For the reasons explained below, the Court grants I3D's motion to compel arbitration (ECF 7).

## STANDARDS

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-15, applies to all contracts involving interstate commerce and specifies that "written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). The text of the FAA "leaves no place for the exercise of discretion by a district court," but "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218 (citing 9 U.S.C. §§ 3-4) (emphasis in original). The district court must limit itself "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

---

[1] Plaintiff served the Cardinal Defendants on August 25, 2021. *See* ECF 29; ECF 30. The Cardinal Defendants have not appeared, and Plaintiff has not moved for an order of default. Accordingly, the Court will dismiss the Cardinal Defendants without prejudice for lack of prosecution unless Plaintiff moves for an order of default or the Cardinal Defendants respond to Plaintiff's Complaint not later than February 16, 2022.

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). The "liberal federal policy regarding the scope of arbitrable issues is inapposite," however, to whether a particular party agreed to the arbitration agreement. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). The validity of an arbitration agreement remains "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Because arbitration is fundamentally "a matter of contract," the FAA "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citations omitted). Courts also should generally "apply ordinary state-law principles that govern the formation of contracts" to determine whether the parties agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[2]

Unless there is clear and unmistakable evidence that the parties agreed that an arbitrator should decide issues of arbitrability, *see First Options of Chicago*, 415 U.S. at 944, a court, not an arbitrator, must decide "the threshold issue of the existence of an agreement to arbitrate." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991). In deciding whether an agreement to arbitrate existed, a court should apply a summary-judgment-style standard. "Only when there is no genuine issue of fact concerning the formation of the agreement" should a court decide that an agreement to arbitrate existed. *Id.* at 1141

---

[2] The only exception to the rule that state law governs the validity of arbitration agreements is when courts must "decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago*, 514 U.S. at 944 (quoting *AT & T Techs., Inc. v. Commc'n Workers*, 475 U.S. 643, 649 (1986)).

(quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). The district court should give the party opposing a motion to compel arbitration "the benefit of all reasonable doubts and inferences that may arise." *Id.* The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). When "the making of the arbitration agreement" is at issue, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "The court shall hear and determine such issue" if the party alleged to violate the agreement does not demand a jury trial. *Id.*

## BACKGROUND

Applying the standards applicable to a motion for summary judgment (Fed. R. Civ. P. 56), the Court draws the following facts from the allegations in Plaintiff's Complaint, the parties' briefs, the filed declarations, and the exhibits submitted by both parties. At this stage of the dispute, the Court considers only those facts that are relevant to determine the procedural and substantive unconscionability of the arbitration clause.

Plaintiff is a "Quality and Engineering Director," with a master's degree in industrial and systems engineering. ECF 8-1, at 1 (Stone Decl.). On March 6, 2019, Defendants gave Plaintiff a one-page offer letter for the position of Chief Operations Officer/Chief Quality Officer at I3D. ECF 8, at 2 (Stone Decl., ¶ 4). The letter specified that Plaintiff's employment would begin on April 4, 2019, and provided, among other things:

> Attached you will find a complete employment contract. Please be aware of the required acceptance of our Arbitration Agreement and Noncompetition Agreement. If you choose to accept this job offer, please sign and return this letter and employment contract to me at your earlier convenience. We look forward to welcoming you to the I3D MFG team and to years of business and team building. Please let me know if you have any questions or if I can provide any additional information.

ECF 8-1, at 2. Plaintiff's signature and the date March 9, 2019, appear at the bottom of the letter. *Id.* Attached to that letter is a document headed "EMPLOYMENT AGREEMENT" (the Agreement). *Id.* at 3. The Agreement contains the following provisions, among others:

> 10.12 Arbitration
>
> > (a) Except as otherwise provided in Section 10.12(e), any dispute, controversy, or claim arising out of the subject matter of this Agreement will be settled by arbitration before a single arbitrator in Wasco County, Oregon.
> >
> > (b) If the parties agree on an arbitrator, the arbitration will be held before the arbitrator selected by the parties. If the parties do not agree on an arbitrator, the Presiding Judge of Wasco County, Oregon Circuit Court shall appoint an arbitrator in accordance with applicable court rules. The arbitrator will be an attorney knowledgeable in the area of business law.
> >
> > (c) The arbitration will be conducted in accordance with the procedures set forth in ORS 36.600 through ORS 36.740, modified by the following provisions:
> >
> > > (1) the arbitrator will resolve any disputes relating to discovery issues;
> > >
> > > (2) the arbitrator will have discretion to order a prehearing exchange of information by the parties and an exchange of summaries of testimony of proposed witnesses;
> > >
> > > (3) the arbitrator will have authority to issue interim relief and provisional remedies;
> > >
> > > (4) the arbitrator will have authority to award any remedy that a court in the State of Oregon could order or grant, including but not limited to injunctive relief and other equitable relief and the imposition of sanctions for abuse or frustration of the arbitration process, except that the arbitrator will not have authority to award punitive damages or any other amount for the purpose of imposing a penalty;

> (5) the award will be in writing, be signed by the arbitrator, and include a statement regarding the disposition of each claim; and
>
> (6) the parties will keep all information relating to the arbitration and the disposition of each claim confidential to the fullest extent permitted by applicable law.
>
> (d) The resolution of any dispute, controversy, or claim as determined by the arbitrator will be binding on the parties. Judgment on the award of the arbitrator may be entered by any party in any court having jurisdiction.
>
> (e) A party may seek from a court an order to compel arbitration, or any other interim relief or provisional remedies pending an arbitrator's resolution of any dispute, controversy, or claim. Any such action, suit, or proceeding—or any action, suit, or proceeding to confirm, vacate, modify, or correct the award of the arbitrator—will be litigated in courts located in Wasco County, Oregon.
>
> (f) For the purposes set forth in Section 10.12(c)(3), each party consents and submits to the jurisdiction of any local, state, or federal court located in Wasco County, Oregon.
>
> 10.13 Attorney's Fees. If any arbitration, action, suit, or proceeding is instituted to interpret, enforce, or rescind this Agreement, or otherwise in connection with the subject matter of this Agreement, including but not limited to any proceeding brought under the Untied States Bankruptcy Code, the prevailing party on a claim will be entitled to recover with respect to the claim, in addition to any other relief awarded, the prevailing party's reasonable attorney's fees and other fees, costs, and expenses of every kind, including but not limited to the costs and disbursements specified in ORCP 68 A(2), incurred in connection with the arbitration, action, suit, or proceeding, any appeal or petition for review, the collection of any award, or the enforcement of any order, as determined by the arbitrator or court.

*Id.*, at 12-14. Those provisions spanned three pages of the Agreement, paginated "Page 10 of 10," "Page 11 of 10," and "Page 12 of 10." *Id.* Plaintiff's signature appears on "Page 13 of 10," followed by the date, "3/9/2019." *Id.* at 15. The Agreement also states, on "Page 9 of 10," the following:

PAGE 6 – OPINION AND ORDER

> 10.6 Severability. If a provision of this Agreement is determined to be unenforceable in any respect, the enforceability of the provision in any other respect and of the remaining provisions of this Agreement will not be impaired.

*Id.*, at 11. Plaintiff began work for I3D under the Agreement in April 2019. ECF 15, at 2 (Mercado Decl., ¶ 2).

In December 2019, Plaintiff took leave for military orders. ECF 1, at 4 (Compl., ¶ 12). In July 2020, Plaintiff informed I3D that he again had military orders in progress, for which he would need to take leave. *Id.*, at 5 (Compl., ¶ 17). Also in July 2020, Plaintiff submitted formal discrimination and hostile work environment complaints against I3D, based on several incidents. *Id.*, at 5-6 (Compl., ¶¶ 20-22). In August 2020, I3D informed Plaintiff that September 1, 2020, would be Plaintiff's last day as an employee of I3D. *Id.*, at 7 (Compl., ¶ 23).

On August 17, 2021, Plaintiff filed this lawsuit. ECF 1. The same day, he sent a letter titled "Arbitration Demand" to I3D, which read, in its entirety:

> Mr. Mercado hereby demands arbitration of this matter in the event that the parties agree to resolve Mr. Mercado's claims by arbitration or the Court mandates the parties proceed with arbitration. The enclosed Complaint identifies the parties, includes the legal and factual bases for the claims, and states the remedies sought.

ECF 8-1, at 16 (Stone Decl.). Soon after, I3D filed the pending motion to compel arbitration (ECF 7) and informed Plaintiff that I3D would not seek to enforce the limitation on punitive damages in the employment agreement (ECF 22, Berg Decl., ¶ 2). Plaintiff opposes I3D's motion, arguing that the arbitration agreement is unconscionable, both procedurally and substantively, rendering it unenforceable. ECF 13.

## DISCUSSION

"Like other contracts, arbitration agreements can be invalidated for fraud, duress, or unconscionability." *Chavarria v. Ralphs Grocery Co.*, F.3d 916, 921 (9th Cir. 2013). "The party

asserting unconscionability bears the burden of demonstrating that the arbitration clause in question is, in fact, unconscionable." *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 614 (2007). Unconscionability is a question of law determined by the court "based on the facts in existence at the time the contract was made." *Id.* There are two types of unconscionability— procedural and substantive. Although some jurisdictions require both substantive and procedural unconscionability to invalidate a contract, the Oregon Supreme Court has expressly declined to resolve that question. *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 555 (2014). The Ninth Circuit, however, interpreting Oregon law, has stated that: "Although both forms of unconscionability 'are relevant, . . . only substantive unconscionability is absolutely necessary.'" *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1093 (9th Cir. 2009) (quoting *Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 566 (2007)). Plaintiff here argues that the arbitration agreement is both procedurally and substantively unconscionable, and so the Court considers each of those theories in turn.

**A. Procedural Unconscionability**

"Procedural unconscionability refers to the conditions of contract formation and focuses on two factors: oppression and surprise." *Bagley*, 356 Or. at 555. In considering the "oppression" prong of procedural unconscionability, a court should consider whether "there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice." *Id.* Evidence of oppression can include "gross inequality of bargaining power, a take-it-or-leave-it bargaining stance, and the fact that a contract involves a consumer transaction." *Id.* The "surprise" prong of procedural unconscionability, on the other hand, "involves whether terms were hidden or obscure from the vantage of the party seeking to avoid them . . . such as ambiguous contract wording and fine print." *Id.*

PAGE 8 – OPINION AND ORDER

Plaintiff contends that Oregon courts have held that contracts signed by an employee as a condition of employment are contracts of adhesion which, by their nature, satisfy the "oppression" prong of the procedural unconscionability inquiry. Oregon courts have indeed held that arbitration agreements found in employment contracts are "not entirely free from procedural unfairness," because they are "part of a classic contract of adhesion, that is, an agreement between parties of unequal bargaining power, offered to the weaker party on a 'take-it-or-leave-it' basis." *Sprague v. Quality Restaurants Nw., Inc.*, 213 Or. App. 521, 526 (2007). That fact alone, however, "does not render [an arbitration agreement] unenforceable" absent "other oppressive circumstances" or deception. *Id.*; *see also Siggelkow v. Nw. Grp., Inc.*, 2019 WL 294759, at *7 (D. Or. Jan. 22, 2019) ("[I]n Oregon, more than a contract of adhesion and unequal bargaining power is required to void an arbitration clause." (simplified)); *Motsinger*, 211 Or. App. at 617 ("[T]he only indicia of procedural unconscionability here is unequal bargaining power. That, however, is not enough to invalidate an arbitration clause on the basis of unconscionability.").

In *Livingston v. Metropolitan Pediatrics, LLC*, the Oregon Court of Appeals discussed procedural unconscionability:

> Although defendants are willing to assume that, as a general proposition, a prospective employer has greater bargaining power than an applicant for employment, in this case it is undisputed that plaintiff, who is highly educated, had an opportunity to review the employment agreement for two weeks, and he signed and returned it without making any changes. Thus, there is no contract of adhesion. We conclude that, to the extent that the parties had disparate bargaining power, the inequality was minimal, and plaintiff voluntarily agreed to the arbitration clause.

234 Or. App. 137, 152-53 (2010) (citations omitted); *see also Lovelance v. DEKRA N. Am., Inc.*, No. 2017 WL 2927153, at *4 (D. Or. June 30, 2017) (declining to find unconscionable an arbitration agreement in an employment contract, where a plaintiff was "a sophisticated, highly-

qualified applicant who was offered an executive-level position as Vice President of Sales at an international company").

Plaintiff asserts that this case is "distinguishable" from *Livingston* and *Lovelace*, contending that he "was not given the opportunity to negotiate the terms of the Agreement or to review the Agreement with an attorney prior to singing it." ECF 13, at 7 n.1. Like the employee in *Lovelace*, however, the record here suggests that Plaintiff was a highly educated candidate and who had at least several days to review the employment agreement before returning it. ECF 8, at ¶¶ 4-5 (Stone Decl.). The record does not reflect that Plaintiff was deprived of the opportunity to investigate or ask about the arbitration agreement before deciding whether to sign the Agreement. The record also does not reflect that Plaintiff tried to ask questions or bargain with Defendants or asked for more time to retain an attorney to review the Agreement.

Plaintiff also argues that the arbitration agreement is procedurally unconscionable because of surprise. "Surprise involves whether terms were hidden or obscure from the vantage of the party seeking to avoid them. Generally speaking, factors such as ambiguous contract wording and fine print are the hallmarks of surprise." *Bagley*, 356 Or. at 555 (citations omitted). Plaintiff contends that the surprise prong is met because the pages containing the arbitration agreement were misnumbered and the arbitration provisions were not set out in bold or italic emphasis. *See Sprague*, 213 Or. App. at 526 (finding an agreement to arbitrate did not meet the "surprise" prong where the arbitration clause was "clearly and fully described in the employee handbook, with the key provisions set off in italics and boldface; the acknowledgment form as well set[] off the agreement in italics[ and t]he language [was] not technical and the typeface [was] large"). Plaintiff fails to mention, however, that the letter accompanying the Agreement specifically directed the reader's attention to the arbitration and attorney fees provisions and

stated that a representative of Defendants could answer any questions related to the Agreement, including those provisions. ECF 8-1, at 2. Perhaps most importantly, Plaintiff does not contend that he was, in fact, surprised to learn that the Agreement contained an arbitration clause. Having considered the circumstances of the execution of the Agreement, the Court is not persuaded that any potential procedural unconscionability, on its own, voids the arbitration agreement. Thus, the Court next considers the issue of substantive unconscionability.

### B. Substantive Unconscionability

"Substantive unconscionability… generally refers to the terms of the contract, rather than the circumstances of formation, and focuses on whether the substantive terms contravene the public interest or public policy." *Bagley*, 356 Or. at 555. Plaintiff argues that the arbitration agreement here contains two substantively unconscionable provisions: a prevailing party attorney fees provision and a prohibition against recovering punitive damages.

#### 1. Attorney fees provision

Under the Agreement, if any action is initiated related to its subject matter, the prevailing party may recover fees, costs, and expenses. ECF 8-1, at 14 (section 10.13 of the Agreement). Plaintiff cites two types of cases in support of his position that the attorney fees provision is unconscionable. First, Plaintiff cites cases addressing whether provisions that specifically allocate the costs associated with arbitration are unconscionable. *See Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553, 574 (2007). Second, Plaintiff cites cases addressing whether attorney fee provisions in arbitration agreements are unconscionable. *See Bermudez v. PrimeLending*, 2012 WL 12893080, at *9 (C.D. Cal. Aug. 14, 2012). The courts that have considered those two distinct types of provisions have applied different analyses to determine a provision's unconscionability. When an arbitration agreement allocates the fees associated with arbitration—for example, the arbitrator's fee—Oregon courts consider the plaintiff's economic

PAGE 11 – OPINION AND ORDER

circumstances to determine whether the allocation "is sufficiently onerous to act as a deterrent to plaintiffs' vindication of their claim." *Vasquez-Lopez*, 210 Or. App. at 574 (finding an allocation of arbitration costs unconscionable where "plaintiffs' cost of arbitration would not only be high in the absolute sense . . . but high in comparison to a trial"). In contrast, as it relates to attorney fee provisions, other jurisdictions have held that "[p]rovisions requiring bilateral, *attorney fee shifting*, i.e., in which the prevailing party—whether employer or employee—may be awarded fees, are unconscionable when they conflict with governing statutes that allow one-way fee shifting in favor of the employee." *Bermudez*, 2012 WL 12893080, at *9 (emphasis added); *see also LaCoursiere v. Camwest Dev., Inc.*, 181 Wash. 2d 734, 748 (2014) ("[M]andatory attorney fee shifting provisions in employment contracts are unconscionable where the legislature authorizes only prevailing employees to collect attorney fees.").

Oregon courts have not unambiguously adopted the statute-based analysis used in other jurisdictions to analyze attorney fees provisions of arbitration agreements. In *Livingston*, the Oregon Court of Appeals considered whether the record permitted a determination that "the fee-shifting provision will deter or unreasonably burden plaintiff's ability to pursue his common-law and statutory claims" such that this provision "would have a detrimental effect on plaintiff's ability to pursue his claims." *Livingston*, 234 Or. App. at 155. The court held that "in the absence of evidence that the fee-shifting provision, *in fact*, results in the arbitration forum not providing a reasonable alternative forum for *this plaintiff*, we conclude that the fee-shifting provision is not substantively unconscionable." *Id.* (emphases added). Although *Livingston* did not use the strong language of *Bermudez* or *LaCoursiere*, it does suggest that at least some consideration of the statute may be appropriate. Key to the *Livingston* analysis, however, is whether a fee-shifting provision effectively deprives a plaintiff of the ability to pursue his claims, based on his specific

PAGE 12 – OPINION AND ORDER

economic circumstances. *Id.*; *see also Le v. Gentle Dental of Oregon*, 2010 WL 3394542, at *8-9 (D. Or. July 29, 2010), *report and recommendation adopted*, 2010 WL 3394476 (D. Or. Aug. 25, 2010) (finding "there is insufficient evidence that the fee-shifting provision renders arbitration an unreasonable alternative forum for" the plaintiff, who was a "sophisticated signatory" to the agreement, had time to review it, did not object to the arbitration provision, and produced no evidence that the defendant refused to discuss or modify that provision).

Plaintiff contends that if he does not prevail on his claims, he will be ordered to pay "at least" $100,000 to $200,000 in attorney fees for Defendants, based on the resulting fees in a similar case. ECF 14, at 2 (Liss Decl., ¶ 2). That fee awards in other cases have been significant and that the fees to be incurred in resolving the pending dispute may be similar is not sufficient. In fact, that is the type of evidence and argument that the Oregon Court of Appeals in *Livingston* considered and found to be inadequate. 234 Or. App. at 155. Under Oregon law, it is not enough to cite the costs incurred in another case and contend that a similar amount could discourage a plaintiff in a different case from filing a claim. *Id.*; *see also Gist v. ZoAn Mgmt., Inc.*, 305 Or. App. 708, 720, 473 P.3d 565, 574, *rev. allowed*, 367 Or. 257, 475 P.3d 880 (2020) ("When the fee provisions themselves are not onerous and when plaintiff's factual information is incomplete, we cannot rely on speculation to declare arbitration costs unconscionable."). Plaintiff also argues that the potential cost of attorney fees "would be too great of a risk to continue pursuing my claims." ECF 20, ¶ 4 (Mercado Decl.). I3D points out, however, that Plaintiff has significant financial resources, including a six-figure income and substantial savings. *Id.*, at ¶¶ 6-7. I3D contends that Plaintiff's financial resources are more than enough to allow him to prosecute his

claim. The Court is not persuaded that Plaintiff has presented enough evidence to meet the *Livingston* standard.[3]

### 2. Punitive damages

In its motion and reply, I3D does not challenge Plaintiff's assertion that the limitation on punitive damages, found at section 10.12(c)(4) of the Agreement (ECF 8-1, at 12), is substantively unconscionable. Rather, I3D argues that, because I3D has agreed not to seek to enforce that limitation, the question of whether that provision is unconscionable is moot. Under Oregon law, "[h]owever, in determining unconscionability, courts review an agreement at the time it was executed, not after concessions are made during litigation to challenge its validity." *Young v. Regis Corp.*, 2006 WL 8459710, at *5 (D. Or. Aug. 2, 2006) (citing *Best v. U.S. Nat. Bank of Oregon*, 303 Or. 557, 560 (1987)). Thus, I3D is incorrect in its assertion that its agreement not to enforce the punitive damages exclusion renders "moot" the question of that provision's unconscionability.

Courts applying Oregon law have consistently found provisions limiting a plaintiff's ability to pursue punitive damages unconscionable. *See Escobar v. Nat'l Maint. Constrs., LLC*, 2021 WL 3572652, at *12 (D. Or. Aug. 12, 2021) ("Consistent with Ninth Circuit precedent, Oregon and Washington courts have found that arbitration provisions prohibiting a party from seeking punitive damages are unconscionable."); *see also Young v. Regis Corp.*, 2006 WL 8459710, at *5 (D. Or. Aug. 2, 2006) (finding unconscionable an arbitration provision that prohibits the plaintiff from seeking punitive damages or injunctive relief). Thus, the Court agrees

---

[3] Because Oregon has not adopted the categorical statute-based test as described above, the Court declines at this stage to consider whether the statutes underlying Plaintiff's claims provide for a one-way fee shifting. Because the test adopted by Oregon courts depends heavily on an individual plaintiff's circumstances, the lack of evidence on that issue here is dispositive.

PAGE 14 – OPINION AND ORDER

with Plaintiff that this provision is substantively unconscionable. The Court next considers whether that provision's unconscionability may be severed from the rest of the Agreement.

### 3. Severability

I3D contends that, even if the Court finds either of the two challenged provisions substantively unconscionable, those provisions should be severed, under section 10.6 of the Agreement (ECF 8-1, at 11). Plaintiff disagrees, arguing that the arbitration agreement is so "infected with serious procedural and substantive unfairness" as to render it unenforceable in its entirety. ECF 13, at 14. Because the Court holds that only one provision—the punitive damage limitation—is substantively unconscionable, the Court considers only whether that provision so permeates the rest of the Agreement.

Plaintiff's own authority suggests that a substantively unconscionable punitive damages provision may be severed from the rest of an otherwise conscionable arbitration agreement. In *Escobar*, the court found unconscionable both a provision limiting punitive damages and a forum selection clause. 2021 WL 3572652, at *13, *11. That agreement—like the one here—also contained a severability provision, and the court held that the two unconscionable provisions did not sufficiently permeate the agreement to render it unenforceable. *Id.* at 14. In contrast, the court in *Young* found that "[n]ot only do the damages, attorney fees, and fee-sharing provisions of the Arbitration Agreement violate federal law, they are flatly inconsistent with the [National R]ules [for the Resolution of Employment Disputes of the American Arbitration Association] that purportedly govern it." *Young*, 2006 WL 8459710, at *6. In that case, the court declined to sever the unconscionable provisions. *Id.* The court noted that severing those provisions "in the face of well-established legal precedent and arbitration rules rendering them unenforceable … would encourage employers to retain such provisions in order to persuade economically-disadvantaged employees to think twice before filing claims related to their employment." *Id.*

PAGE 15 – OPINION AND ORDER

Plaintiff has not made the kind of showing that the plaintiff in *Young* did—that multiple provisions of an arbitration agreement were not only substantively unconscionable, but contrary to both federal law and the rules set forth by the American Arbitration Association. Plaintiff argues only that because a provision is unconscionable, severance necessarily is not appropriate. The Court is not persuaded and agrees with I3D that severing the punitive damages exclusion under section 10.6 of the Agreement is appropriate. Thus, the Court servers the punitive damages exclusion and enforces the rest of the Arbitration Agreement.

## CONCLUSION

The Court GRANTS I3D's Motion to Compel Arbitration (ECF 7). In addition, as noted above, the Court will dismiss the Cardinal Defendants without prejudice for lack of prosecution unless Plaintiff moves for an order of default or the Cardinal Defendants respond to Plaintiff's Complaint not later than February 16, 2022.

**IT IS SO ORDERED**.

DATED this 2nd day of February, 2022.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge